**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **IKE JENKINS, *et al.*,** | : | **Case No. 1:03cv2453** |
| | : | |
| **Plaintiff,** | : | **JUDGE KATHLEEN O'MALLEY** |
| | : | |
| **v.** | : | |
| | : | **MEMORANDUM AND ORDER** |
| **KOCH CORPORATION,** | : | |
| | : | |
| **Defendant.** | : | |

On December 1, 2003, Plaintiff Ike Jenkins ("Jenkins") and General Construction, Inc. ("GCI") (collectively referred to as "Plaintiffs"), filed a complaint against Defendants Koch Corp. ("Koch") alleging that Koch listed GCI on certain City contracts without ever telling GCI in order to represent (falsely) that Koch would employ a minority-owned subcontractor. Plaintiffs filed their second amended complaint on July 8, 2004 alleging breach of contract, fraud, and unjust enrichment. Currently before this Court is Koch's Motion for Summary Judgment (Doc. 75). After considering the issues outlined below, Koch's Motion for Summary Judgment is **GRANTED** and this case is **DISMISSED**.

## I. FACTUAL BACKGROUND

In 2001, Koch submitted several bids to be the general contractor for several jobs for the City of Cleveland. As part of the bidding process, general contractors are required to submit a list of subcontractors that must include a Minority Business Enterprise ("MBE"). Without an MBE subcontractor, a bid would not be considered by the City of Cleveland. GCI was registered with the City of Cleveland as an MBE during this time period and had previously worked with Koch on city contracts. Koch listed GCI on its 2001 bids as the MBE to perform some of the construction work. Koch, however, made no mention to GCI that it had been listed as a proposed subcontractor on nine of the eleven bids, despite affixing Jenkins' signature to the bid documents.[1] Plaintiffs allege they had no knowledge of their inclusion in the bids until they were contacted by the City of Cleveland and Koch after the City awarded three of the jobs to Koch, identified as contracts A-02, B-02 and C-02.[2]

After Plaintiffs were informed of the various contracts, GCI agreed to perform some of the work; Koch and GCI entered into subcontracts for two of the jobs. GCI turned down an offer from Koch to work on the third job, though Plaintiffs claim GCI would have been able to work on that job had it been given more notice by Koch. A dispute then arose regarding payment and performance of the work on the two jobs GCI did accept. Specifically, Koch claimed that GCI either failed to perform the work it was allotted, or, in some instances, performed the work improperly, requiring Koch to redo it at some substantial expense to Koch. Koch ultimately paid GCI some of the sums due under the contracts, but

---

[1] Defendants apparently copied the MBE sheets from earlier bids that Jenkins had signed.

[2] Koch asserts it believed that it had the authority to continue to use GCI's name in its bids, but Jenkins denies that fact.

refused to pay for work it says was never performed. Koch eventually replaced GCI with a different MBE contractor - one with which it did not have a prior relationship.[3] Plaintiffs then filed a complaint alleging breach of the subcontracts, fraud in connection with the misrepresentations surrounding the bids submitted to the City of Cleveland, and unjust enrichment, claiming that Koch benefitted from the use of Jenkins' name and that Plaintiffs are entitled to the money they would have received under the contracts awarded to Koch by the City of Cleveland, including the third contract that Plaintiffs declined.

Plaintiffs have amended their complaint twice, the second time without first asking leave from the Court. Because Koch had already filed a partial Motion to Dismiss based on the claims in the Second Amended Complaint, the Court granted Plaintiffs leave to file the Second Amended Complaint in its order denying Koch's motion. (Doc. 61.) In its third attempt to amend its complaint, Plaintiffs moved to substitute Jenkins Construction, Inc., a Delaware corporation, as the corporate party plaintiff in this action because GCI's articles of incorporation were cancelled by Ohio's Secretary of State on December 30,

---

[3] Plaintiffs originally took the position in this action that they suspected Koch had named GCI in its bids in order to convince the City of Cleveland that it intended to use an MBE subcontractor, and thereafter fail to do so. In light of Koch's contracts with GCI, an offer to have GCI work on the third project, and ultimately use a substitute MBE on all the projects, Plaintiffs now concede they have <u>no</u> evidence to support their original suspicion.

1994. (Doc. 62). That motion was denied.[4] As such, Koch has filed a Motion for Summary Judgment arguing GCI has no capacity to sue and Jenkins lacks standing to assert he claims in this action on his own behalf.[5]

## II. DISCUSSION

### A. Legal Standard

Fed. R. Civ. P. 56 states that summary judgment is appropriate only when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Lapointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The party moving for summary judgment has the burden of showing that there are no genuine issues of material fact in the case. *Id*. The moving party may meet its burden by showing that the nonmoving party lacks evidence to support essential elements of its case. *See Barnhart v. Pickrel, Schaeffer & Ebeling Co.*,

---

[4] Defendant's opposed Plaintiffs' Motion to file a Third Amended Complaint on a number of grounds. The Plaintiffs did not respond to Defendant's arguments, which the Court ultimately found well-taken. Specifically, the Court found that it would have been futile to allow Plaintiffs to substitute Jenkins Construction, Inc. as the corporate plaintiff in this case because: Jenkins Construction, Inc. (1) is not a successor in interest to GCI - it was incorporated in Delaware as a separate legal entity ten years after GCI was incorporated, and has never operated under the trade name GCI; (2) was not a registered, or authorized, MBE in the City of Cleveland during any relevant time period; (3) never was named in a construction bid as a proposed MBE by Koch; (4) was never a party to a contract with Koch; and (5) never performed work or received payment under any contract with Koch. For these reasons, the Defendant argued, and the Court agreed, that Jenkins Construction, Inc. could assert no legal interest in any claim in this action.

[5] As noted in Defendant's Reply Brief, Plaintiffs do not argue that either Jenkins or GCI has the legal capacity to sue with respect to the fraud or unjust enrichment claims. For that reason, Plaintiffs argue that summary judgment should be granted on those two claims without further analysis. In the interest of justice, however, this Court will consider the merits of those claims regardless of Plaintiff's failure to address them.

*L.P.A.*, 12 F.3d 1382, 1389 (6th Cir. 1993). A complete failure of proof on the part of the nonmoving party "to make a sufficient showing on an essential element of her case with respect to which she has the burden," renders all other facts immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In deciding a motion for summary judgment, the court views all facts in the light most favorable to the nonmoving party. *Smith v. Pan Am World Airways,* 706 F. 2d 771,773 (6th Cir. 1983).

**B. Analysis**

**1. General Construction**

Fed. R. Civ P. 17(b) states that the "capacity of a corporation to sue or be sued shall be determined by the law under which it was organized." Because GCI was incorporated in Ohio in 1983, Ohio's Corporation Act, R.C. §1701.13(A), governs the ability of Ohio corporations to sue and be sued. Furthermore, R.C. §1701.88 regulates Ohio corporations' capacity to sue after its articles of incorporation have been cancelled. Ohio courts have held that §1701.88(A) and (B) take away a corporation's capacity to commence a suit after its articles of incorporation have been cancelled with the exception of actions necessary to the "winding up" its corporate affairs. *See e.g., Superior Piping Contractors, Inc., v. Reilly Industries, Inc.*, 2003 Ohio App. LEXIS 5664,**8 (Ohio Ct. App. 2003) (stating that when a corporation's articles of incorporation have been cancelled, that corporation has no standing to institute a lawsuit); *Bain Builders, et al. v. Huntington National Bank*, 2001 Ohio App. LEXIS 3025 **8 (Ohio Ct. App. 2001) (stating that a lawsuit maintained by a corporation must be for the purpose of winding up its affairs or based on a claim that accrued during its incorporation).

In *Mack Construction Development Company, et al. v. Austin Smith Construction Company*

*et al.*, the Twelfth District Court of Appeals of Ohio held that a corporation whose articles were cancelled lacked the capacity to sue. 65 Ohio App. 3d 402, 405 (Ohio Ct. App. 1989). In *Mack*, the plaintiff had entered into a contract five years after its corporate charter had been cancelled. *Id*. When the plaintiff later tried to sue for breach of contract, the court found that the plaintiff offered no evidence that the company was in the process of "winding up" its affairs and concluded that the plaintiff had fraudulently continued to conduct business. *Id.* The court further held that the public policy behind R.C. §1701.88 was to deter businesses from operating "under a mantle of state approval" even if this meant an inequitable loss to the plaintiff. *Id.*

Like the plaintiff in *Mack*, GCI has not brought forth any evidence that the present suit was instigated for the purpose of "winding up" its corporate affairs, nor does it seem likely it could do so considering its articles of incorporation were cancelled almost nine years before this suit commenced and well before any of the events surrounding this suit occurred. While GCI did enter into the two contracts at issue, any action for breach of those contracts can not be construed to be related to the winding up of its corporate affairs. Accordingly, this Court determines that GCI does not have the capacity to sue on these or any other contracts, and therefore, can not be a proper party to this suit.

**2. Jenkins**

As GCI has no capacity to sue for the reasons discussed above, for any claims to survive Koch's Motion for Summary Judgment, Jenkins must have individual standing to pursue them. In order to have standing, a "plaintiff must show that he *personally* has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." *See Stevenson v. J.C. Bradford & Co.*, 277 F.3d 838,

852 (6th Cir. 2002) (*citing Gladstone Realtors v. Village of Bellwood* 441 U.S. 91, 99 (1979)) (emphasis added). Further, a plaintiff must be asserting his own rights and not those of others. *See Pestrak v. Ohio Elections Com*. 926 F.2d 573, 577 (6th Cir. 1991) (*citing Secretary of State of Maryland v. Joseph H. Munson Co.*, 467 U.S. 947, 955 (1984)). Jenkins fails to demonstrate one, or both, of these requirements for all counts.

**a. Count One - Breach of Contract**

Jenkins asserts that he has standing to sue for breach of contract because, as a corporate officer, he either incurred personal liability, is a successor in interest to GCI, or is an "intended" third-party beneficiary. Jenkins further argues that summary judgment is inappropriate because there are material facts that preclude awarding summary judgement to Koch. All of these arguments fail.

First, Jenkins cites *Chatman v. Day* for the proposition that, because he personally signed the subcontracts on behalf of GCI, a defunct corporation, he incurred personal liability and, therefore, has standing to sue for the breach of these contracts. 455 N.E.2d 672, 674 (Ohio Ct. App. 1982). *Chatman* is distinguishable from the current facts because the corporate officer in that case was a defendant who was trying to escape liability - not assert any rights as a plaintiff. *Id. Chatman* makes no mention of corporate officers having standing to sue. Moreover, the court in *Chatman* held that the Corporation Act's firm proscription shows the intention of the legislature to "not tolerate the use of lapsed corporations by individuals as a shield for continuing to do business...." *Id* (emphasis added). Accordingly, Jenkins' reliance on *Chatman* as a sword is misplaced.

Next, Jenkins cites *Kiraly v. Bonanno, Inc.*, in support of his argument that, because he was

allegedly a successor in interest to GCI, he has the capacity to sue for breach of contract. 1997 WL 775685 (Ohio Ct. App. Oct. 29,1997). The plaintiff in *Kiraly* argued that under the Corporation Act, R.C. §1701.88 (D), he had the capacity to sue for breach of contract as a successor in interest eighteen months after he had voluntarily dissolved his business corporation. Jenkins' reliance on *Kiraly*, like *Chatman*, is also misplaced. The court in *Kiraly* held that, under R.C. §1701.88 (D) an owner would only have the capacity to sue for the purposes of "winding up" corporate affairs. *Kiraly* at *2-3. Similarly, Jenkins, the owner of GCI, does not have standing to sue as a successor in interest since this suit is not for the purpose of "winding up" corporate affairs.

Furthermore, Jenkins asserts he has standing to sue for breach of contract because he is a third-party beneficiary of the subcontracts between GCI and Koch. While he does cite to case law showing Ohio recognizes the right of third-party beneficiaries to sue, *Visintine & Co.* v. *New York, Chicago, & St. Louis Rd. Co.*, 169 Ohio St. 505, 507 (Ohio, 1959) (holding that Ohio recognizes third-party beneficiaries), he offers no fact or legal theory to show that he is a third-party beneficiary of the subcontract with enforceable rights.

In *Hill v. Sonitrol of Southwestern Ohio, Inc.*, 36 Ohio St.3d 36, 40 (Ohio 1988), the Ohio Supreme Court, in distinguishing between the different types of third-party beneficiaries, adopted Section 302 of the Restatement of the Law 2d, Contracts (1981) 439-440, that reads:

> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
>
> (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

> (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
>
> (2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

As noted in *Hill*, Comment (e) to Section 302 of the Restatement of the Law 2d provides that "performance of a contract will often benefit a third person, (b)ut unless the third person is an intended beneficiary as here defined, no duty to him is created." *Hill v. Sonitrol of Southwestern Ohio, Inc.*,36 Ohio St.3d 36 at 40. Accordingly, only an "intended" beneficiary has standing to sue to enforce their rights under a contract. *Norfolk & Western Co. v. United States* 641 F.2d 1201, 1208 (6th Cir. 1980).

Likewise, the Sixth Circuit Court of Appeals, applying Ohio law, has adopted an "intent to benefit" test to determine whether a third-party beneficiary is an "intended" or "incidental" beneficiary. *Id.* "Under this analysis, if the promisee...intends that a third-party should benefit from the contract, then that party is the 'intended beneficiary' who has enforceable rights under the contract." *Id.* All other third-party beneficiaries are merely "incidental" and have no enforceable rights. *Id.* In applying the "intent to benefit" test, the Eastern District Court of Michigan in *Ripmaster v. Toyoda Goesel, Co., et al.,* 824 F. Supp. 116, 117 (E.D. Mich. 1993), held that an employee was an "intended" beneficiary of a contract between his employer and another company when he was to perform the work and receive commissions under the contract. These two factors showed there was a clear indication to benefit the employee personally.

While Jenkins asserts that he is an "intended" beneficiary, he offers no support to show the subcontracts were designed to benefit him personally. During his deposition, Jenkins admits he did not personally perform any of the work under the subcontracts and there is no mention of him receiving any

commission. Jenkins further admits that he signed the subcontract in his capacity as president of GCI, not as an individual, and that only GCI submitted invoices and received payments for work performed. Jenkins' interest as a shareholder alone, while presumably providing indirect benefits to him from any profits GCI makes, does not make him an intended beneficiary under the contract itself.[6]

Jenkins has failed to demonstrate any intent, either explicit or implied, that he was an "intended" beneficiary of the subcontracts. Any benefits, therefore, he may have received under the subcontracts were merely incidental. Accordingly, he has no standing as a third-party beneficiary. As such, a claim for breach of contract can not be sustained.

Finally, Jenkins cites *Buckeye Power Sales Co. v. Hightower,* 1992 Ohio App. LEXIS 3657 (Ohio Ct. App. July 2, 1992), in support of his argument that the question of whether a corporate officer is acting within the Corporation Act is a fact to be determined at trial and is inappropriate for summary judgment. In *Buckeye Power Sales Co.,* the court held that summary judgment was not appropriate because the facts in that case had not been developed enough to determine if a corporate officer, who was being sued individually, was acting with the purpose of "winding up" corporate affairs. That is not an issue here. As mentioned earlier, GCI's corporate charter was cancelled nine years before this suit commenced and over six years before any of the alleged events occurred. Since R.C. §1701.88(D) heeds "that the directors shall proceed as speedily as is practicable to a complete winding up of the affairs of the corporation," Jenkins may not claim he was still "winding up" corporate affairs six years later, especially when he was authorizing GCI to enter into contracts for new work.

There does not seem to be any intent on the part of the courts or the legislature to allow corporate

---

[6] If this were so, all shareholders could assert rights under all corporate contracts. That is clearly not the law.

officers who continue to conduct business after cancellation of a corporate charter to have any affirmative rights other than those associated with "winding up" corporate affairs. As the Court noted in *Mack*, a corporate officer who continues to conduct business after a corporation ceases to be licensed essentially commits fraud; allowing that officer to sue and to, thereby, benefit from their fraudulent activity, would violate public policy. For these reasons, Jenkins does not have standing to sue as a party to the subcontracts between GCI and Koch.

**b. Count Two - Fraud**

Jenkins asserts that the use of his signature in relation to the bids to the City of Cleveland constitutes fraud. If Jenkins' allegations are true - that Koch did forge Jenkins' signature - a fraud may have been committed. Jenkins, however, must show that the fraud was committed against *him* in order to sue Koch.[7] In Ohio, common law fraud involves:(1) a representation, or where there is a duty to disclose, concealment of a fact, (2) which is material in nature, (3) made falsely, with knowledge of its falsity, or with utter disregard or recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon (it), (5)which results in justifiable reliance upon the representation or concealment, and (6) proximately causing some injury. *See Glazer v. Lehman Brothers, Inc., et al.,* 394 F.3d 444, 459 (6th Cir. 2005) (citing *Davis v. Sun Refining and Marketing Co.,* 109 Ohio App. 3d 42, 671 N.E.2d 1049,1058 (Ohio Ct. App. 1996)).

Even if one accepts Jenkins' contention that Koch had a contractual duty to disclose "that (Jenkins and GCI) were the minority subcontractors on various bids with the City of Cleveland..." (Doc. 43 at ¶39), it is clear that Plaintiffs neither relied on those representations nor were injured by them. Indeed, GCI and

---

[7] The City of Cleveland is not, and never has been, a party to this action.

Jenkins benefitted from Koch's alleged misrepresentation because they were offered the opportunity to participate in each of the contracts Koch was awarded by the City. While the City may have a basis to assert that they were defrauded by Koch into awarding contracts A-02, B-02, and C-02, Plaintiffs have no basis upon which to premise a fraud claim.

### c. Count Three - Unjust Enrichment [8]

Finally, Jenkins claims that Koch was unjustly enriched by using Jenkins' signature on the bids submitted to the City of Cleveland. To state a claim for unjust enrichment Jenkins must first establish that a benefit was conferred upon Koch by Jenkins, and second, that the circumstances render it unjust to permit acceptance of the benefit without compensation. *U.S. Health Practices, Inc. v. Byron Blake M.D.*, 2001 WL 277291 at *2 (Ohio Ct. App. Mar. 22, 2001). To do this, Plaintiffs must establish that they incurred a substantial detriment that was casually connected to the benefits conferred on Koch. *See The Andersons, Inc. v. Consol, Inc.*, 348 F.3d 496, 502 (6th Cir. 2003).

Jenkins first fails to demonstrate the first element of unjust enrichment. While Koch gained some benefit in naming GCI as a subcontractor, Jenkins did not personally confer it. Jenkins' signature only appeared on the bids as a representative of GCI. Thus, while Jenkins claims that Koch used his "minority subcontractor status" to win the bids with the City of Cleveland, (Doc. 43 at ¶ 49), Jenkins was not an MBE; only GCI had MBE status. Use of Jenkins' "good name, reputation and minority status," as claimed by Jenkins, therefore, could not confer any benefit to Koch. While it is true that, if Koch's use of GCI in its bid and use of Jenkins' signature was unauthorized (a fact the Court assumes here but does not decide), Koch's conduct was reprehensible, the fact is that GCI cannot sue Koch for that, or any, of its conduct.

---

[8] Plaintiffs have labeled this count as "Count IV." Since there are only three counts, the Court will refer to it as Count Three.

Because only GCI could confer a benefit on Koch, Plaintiffs unjust enrichment claim must fail.

Further, while Plaintiffs contend they suffered a detriment because they are entitled to the money they would have received under all three of Koch's contracts with the City of Cleveland as a result of the improper use of their names, (Doc. 43 at ¶55), only GCI, and not Jenkins, would have received money under these contracts. Accordingly, there is no clear detriment to Jenkins by Koch's use of his signature. Since Jenkins conferred no benefit to Koch, and no detriment was conferred upon Jenkins, a claim of unjust enrichment fails.

## III. CONCLUSION

While the Court does not condone unauthorized use of another's name or signature for any purpose, Plaintiffs' failure to assure that GCI was authorized to do business in the state of Ohio is fatal to its claims. For the reasons set forth above, Koch's Motion for Summary Judgment is properly **GRANTED**. Accordingly, this case is **DISMISSED**.

**IT IS SO ORDERED.**

**s/Kathleen M. O'Malley**
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated**: August 15, 2005